J-A26001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.S., | |
| Appellant | No. 1366 WDA 2015 |

Appeal from the Judgment of Sentence Entered on June 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0010399-2014
CP-02-CR-0010402-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED JANUARY 09, 2017**

Appellant, A.S.,[1] appeals from the judgment of sentence of an aggregate term of 7½-15 years' incarceration, following his open plea to sexual offenses involving two minor victims, both of whom are Appellant's younger siblings.  Appellant's sole claim raised in this appeal challenges the discretionary aspects of his sentence.  After careful review, we vacate the judgment of sentence and remand for resentencing.

The trial court did not provide any summary of the pertinent facts giving rise to Appellant's guilty plea in its Pa.R.A.P. 1925(a) opinion.

_____

[1] Appellant's name, the victims' names (Appellant's siblings), as well as names of Appellant's other family members, have been omitted from this memorandum in order to protect the victims' identities.

However, the Commonwealth made the following statement during Appellant's guilty plea hearing:

> [Appellant], who is [the victims'] biological brother, went to Indiana Regional Medical Center for treatment. At that time he got a psychological evaluation and made statements to the psychiatrist stating that he had inappropriate sexual contact with his younger siblings.
>
> From there … the two children were forensically interviewed, where they made disclosures. And [Appellant] also made statements to the detective in this case saying that he had touched [his brother's] bare penis with his hand between 12/13 and 5/14 at their residence.
>
> And he also stated that he had touched [his sister's] vagina, her breasts with his hands, he had her touch his front private parts with her hands more than one time, again, between December of 2013 and May of 2014. And then he did admit that there was penetration involved….

N.T. Guilty Plea Hearing, 2/17/15, at 7-8. At the time of the hearing, Appellant was 19 years old. *Id.* at 3. The victims in this case, his twin siblings, were born in July of 2004. Thus, the conduct giving rise to Appellant's charges appears to have occurred when he was 18 years old, and when his siblings were 8 years old.

On August 28, 2014, the Commonwealth charged Appellant with numerous sexual offenses at CP-02-CR-0010399-2014 (hereinafter, "10399"). Approximately two weeks later, additional charges were filed against Appellant at CP-02-CR-0010402-2014 (hereinafter, "10402"). On February 17, 2015, Appellant entered a guilty plea at 10399 to indecent assault, 18 Pa.C.S. § 3126(a)(7) (complainant less than 13 years of age); unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); endangering the

welfare of children, 18 Pa.C.S. § 4304(a)(1); and corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii). That same day, Appellant entered a guilty plea at 10402 to sexual assault, 18 Pa.C.S. § 3124.1; incest, 18 Pa.C.S. § 4302(b)(1) (complainant less than 13 years of age); two counts of indecent assault (complainant less than 13 years of age); endangering the welfare of children; corruption of minors; and unlawful contact with a minor.

Sentencing was deferred for the production of a pre-sentence investigation (hereinafter, "PSI") report. On June 24, 2015, the trial court sentenced Appellant to 2½-5 years' incarceration for indecent assault, and to no further penalty for the remaining counts at 10399. The court also sentenced Appellant to a consecutive term of 5-10 years' incarceration for sexual assault, and to no further penalty for the remaining counts at 10402. Thus, Appellant received an aggregate sentence of 7½-15 years' incarceration, for his convictions at 10399 and 10402.[2]

On August 7, 2015, Appellant filed a timely[3] motion to modify his sentence, which was denied without a hearing on August 13, 2015.

_____

[2] As a result of these convictions, the trial court ordered Appellant to register for life as a Tier 3 offender under Pennsylvania's Sexual Offender Registration and Notification Act. *See* 42 Pa.C.S. § 9799.14(c).

[3] Appellant initially filed a motion for an extension of time to file post-sentence motions on June 30, 2015. The trial court failed to rule on that motion in a timely fashion. Subsequently, on July 22, 2015, following a change in counsel (trial counsel was permitted to withdraw on July 7, 2015), Appellant's newly appointed public defender, and current counsel for Appellant, filed a motion requesting, *inter alia*, that the trial court accept a
*(Footnote Continued Next Page)*

Appellant filed a timely notice of appeal, and then filed a timely, court-ordered Rule 1925(b) statement. The trial court issued its Rule 1925(a) opinion on January 14, 2016.

Appellant now presents the following question for our review: "Did the trial court violate 42 Pa.C.S.[] § 9721(b) by focusing on improper factors, including vague allegations of crimes for which [Appellant] was never charged, and by disregarding mitigating evidence, including [Appellant]'s rehabilitative needs?" Appellant's Brief, at 7.

Appellant's claim implicates the discretionary aspects of the trial court's sentencing decision.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

_(Footnote Continued)_ ───────────────

_nunc pro tunc_ post-sentence motion and/or a supplemental post-sentence motion. On July 24, 2015, the trial court issued an order granting Appellant leave to file a _nunc pro tunc_ post-sentence motion. Nevertheless, the trial court does not characterize Appellant's August 2015 post-sentence motion as having been filed _nunc pro tunc_. **See** Trial Court Opinion (hereinafter, "TCO"), 1/14/16, at 2 ("A timely Post-Sentence Motion to Modify Sentence was filed and was denied on August 13, 2015."). In any event, whether Appellant's August 2015 post-sentence motion was timely filed or filed by leave of court _nunc pro tunc_, the trial court ultimately accepted Appellant's motion as having preserved the claims now presented for our review.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)).

Moreover,

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super.

2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, Appellant timely appealed his sentence, after having preserved his sentencing claims in a post-sentence motion. Appellant has also provided a Rule 2119(f) statement in his appellate brief, which purports to offer reasons why his sentencing claim presents a substantial question for our review. We agree with Appellant that he presents a substantial question for our review. ***See Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (concluding that the appellant raised a substantial question where it was alleged that the trial court failed to properly consider the factors set forth in 42 Pa.C.S. § 9721(b)); ***Commonwealth v. Stewart***, 867 A.2d 589, 592 (Pa. Super. 2005) ("Based on [the a]ppellant's assertion that the sentencing court considered improper factors in placing the sentence in the aggravated range, we conclude that [the a]ppellant presents a substantial question on appeal."); ***Commonwealth v. Penrod***, 578 A.2d 486, 490 (Pa. Super. 1990) (concluding allegation that sentencing court considered facts not of record raises a substantial question). Accordingly, we now turn to the merits of Appellant's claim.

A summary of pertinent facts related to Appellant's sentence is necessary to discuss the various aspects of his multi-part claim. First, Appellant's sentences at 10399 and 10402 were both above the standard guideline sentencing ranges for their respective offenses. It is undisputed that Appellant had no prior adult criminal record, and no prior juvenile

record, when he was sentenced by the trial court on June 24, 2015. Consequently, Appellant's prior record score (hereinafter, "PRS") was zero. With regard to the sentence imposed at 10399 for indecent assault under Section 3126(a)(7), the offense gravity score (hereinafter, "OGS") for that offense is six. The standard range guideline sentence for that PRS/OGS pairing is a minimum sentence of 3-12 months' incarceration, with the aggravated/mitigated range modifier of +/- 6 months. *See* 204 Pa.Code § 303.16. The trial court sentenced Appellant to 2½-5 years' (30-60 months') incarceration for this offense. Therefore, Appellant's sentence for indecent assault at 10399 was a full year above the aggravated sentencing range recommendation and, thus, his sentence fell outside the guidelines. With regard to the sentence imposed at 10402 for sexual assault under Section 3124.1, the OGS for that offense is eleven. The standard range guideline sentence for this PRS/OGS pairing is a minimum sentence of 36-54 months' incarceration, with the aggravated/mitigated range modifier of +/- 12 months. *Id.* The trial court sentenced Appellant to 5-10 years' (60-120 months') incarceration for that offense. Therefore, Appellant's sentence for sexual assault at 10402 was in the aggravated sentencing range, but still within the guidelines.

Case law and statutory constraints provide additional guideposts for our review of the trial court's discretion in imposing these sentences:

> [42 Pa.C.S. §] 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines

erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."  42 Pa.C.S. § 9781(c).  Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines.  [**Commonwealth v.**] **Walls**, [926 A.2d 957,] 963 [(Pa. 2007)] (quoting 42 Pa.C.S. § 9781(d)).  The **Walls** Court specifically admonished that the weighing of factors under 42 Pa.C.S. § 9721(b) was exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors.  **Id.** at … 966.  The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).  **Id.** at … 967.

**Commonwealth v. Bowen**, 975 A.2d 1120, 1123–24 (Pa. Super. 2009).

Here, Appellant's sentence for indecent assault fell outside the guidelines.  Accordingly, we review whether that sentence was "unreasonable."  **Id.**  Appellant's sentence for sexual assault fell within the aggravated range of the sentencing guidelines, but not outside of those guidelines, therefore we review whether that sentence was "clearly unreasonable."  **Id.**  We must make both of these determinations with due consideration of "the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines[,]"  and we do so with particular concern for whether Appellant received an individualized sentence.  **Id.**

In its opinion, the trial court indicated that, during Appellant's guilty plea hearing, it had reviewed each charge and the applicable maximum penalty for each offense. TCO, at 3-4 (quoting from N.T. Guilty Plea Hearing, 2/17/15, at 3-7). The court also indicated that, during Appellant's sentencing hearing, it accurately noted the relevant OGS's for sexual assault and indecent assault, as well as Appellant's PRS. *Id.* at 4 (quoting from N.T. Sentencing Hearing, 6/24/15, at 2). The trial court then stated:

> At the sentencing hearing this [c]ourt also noted that it had read and considered a [PSI] report and several letters written on behalf of [Appellant], including letters from his brother and sister. "Where pre-sentence reports exist, [the appellate court] shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.["] ***Commonwealth v. Macias***, 968 A.2d 773, 77 (Pa. Super. 2009) [(quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)).] This [c]ourt then placed its reasons for imposing sentence on the record:

> > THE COURT: Well, there are very few cases that I think about as much as I think about the sentencing in this case. I think about the fact that you did enter a plea of guilty. That you have sought help. But not until you were actually arrested.

> > I think in spite of the letters that your brother and sister sent me, that the impact on them must be absolutely horrendous. I can't imagine a child of that age, children of that age going through being attacked by somebody that they loved and trusted. I am also concerned because there is an issue of penetration with your sister. Sometimes you say yes. Sometimes you say no. So, I'm not sure how forthcoming you really are.

As I said, Dr. Pass'[4] report is very positive and leads me to think that he believes that you should be on probation. However, probation is not only about rehabilitation. Sometimes, probation is about what happened to the victims and how to safely protect the victims. Your brother and sister are still youthful. I am especially concerned about [the] allegations in 2004 where you were alleged to have had sexual contact with both your brother and sister, as well as a young six-year old or four-year old cousin.

I would have thought that if your family and you did nothing at that time, that you're not going to do anything now. So this isn't a case where you get two bites of the apple. Mo[s]t certainly in my courtroom and not when young children are involved.

([N.T. Sentencing Hearing, 6/24/15, at] 5-6).

As the record reflects, this [c]ourt appropriately read and considered the [PSI] report, considered the factors and severity of the present offense, evaluated [Appellant]'s potential for rehabilitation and imposed a sentence which took all of these factors into consideration. Moreover, the record reflects great deliberation and consideration in the formulation of the sentence. [Appellant]'s unhappiness with the length of his sentence does not mean it is excessive or is otherwise inappropriate. Given the facts of this case, the sentence imposed was appropriate, not excessive and well within this Court's discretion. This claim must fail.

Accordingly, for the above reasons of fact and law, the judgment of sentence entered on June 24, 2015 must be affirmed.

TCO at 5-6.

Appellant's claim is multifaceted. The first sub-part concerns his assertion that the trial court relied on impermissible factors, namely, facts

---

[4] As discussed further, *infra*, Dr. Allan Pass treated Appellant during the course of the proceedings below in a state-certified sexual offender program.

outside or otherwise not supported by the record, in crafting Appellant's sentences for sexual assault and indecent assault. Specifically, Appellant claims the trial court relied on the ostensibly unsubstantiated claim that Appellant had prior sexual contact with the victims, as well as sexual contact with another minor, several years prior to the events that led to Appellant's guilty plea in this case.

Indeed, the trial court indicated that it was "especially concerned about [the] allegations in 2004" of prior sexual misconduct. TCO at 5. However, the record does not substantiate this claim. The PSI report, crafted by the Adult Probation Office of the Court of Common Pleas of Allegheny County (hereinafter "APO"), indicates that Appellant had no prior adjudications of delinquency.[5] Appellant's PSI Report, 6/2/15, at 4. The PSI report makes no mention of any prior allegations of sexual misconduct, nor does it note any prior allegations of criminal misconduct, much less any convictions or adjudications of juvenile delinquency.

The primary impetus for the allegations appears to come from two sources. First, the Commonwealth briefly stated during Appellant's sentencing hearing: "[T]here were previous allegations of inappropriate sexual contact with these children in 2004. Those were unable to be

_____

[5] Appellant was born in 1995. Therefore, any allegations arising in 2004 must have been when Appellant was a 9-year-old, and when the victims, born in 2004, were infants.

- 11 -

prosecuted at that time. There was also an allegation [regarding Appellant] and a young cousin." N.T. Sentencing Hearing, 6/24/15, at 4. No evidence was offered to support the Commonwealth's assertion. The Commonwealth did not even cite a source for the allegations.

The only information we find in the record tending to support the prior allegations of sexual misconduct comes from the psychological assessment/report of Appellant provided by Dr. Allan Pass. In that report, Dr. Pass stated: "A review of available records indicates that [Appellant] has one prior juvenile conviction occurring in 2009 at the age of 13 involving indecent contact (genital fondling) with his male cousin … who was age 8." Final Treatment Status Summary Report, 5/16/15, at 2. Dr. Pass did not provide a citation to, or otherwise identify, the "official records" from which he drew this conclusion. Indeed, this Court finds it strange that Dr. Pass was privy to an "official report" that apparently was not available to the APO or the prosecutor in this case, as both the APO and the prosecutor told the trial court that Appellant had no prior adult or juvenile convictions. Moreover, the date provided by Dr. Pass does not correspond to the date of prior allegations cited by both the trial court and the Commonwealth, and the age of the alleged victim listed by Dr. Pass does not correspond with the age of the victim referenced by the court at sentencing (a "six-year old or four-year old cousin"). **See** N.T. Sentencing Hearing, 6/24/15, at 5.

Dr. Pass also referenced an Office of Children, Youth and Families (hereinafter, "CYF") report from 2009, which indicated "reports of sexually

improper contact with" the same victims at issue in the instant case. *Id.* Dr. Pass went on to note that "CYF closed their interest in this case as of May 18, 2009, indicating that 'there were no further circumstances that warrant further investigation or ongoing services from our agency.'" *Id.* As far as we know, CYF could have closed interest after deciding that the allegations were unfounded, rescinded, or simply due to a lack of evidence.

Depending on the circumstances of each case, prior allegations of criminal conduct may or not be considered for sentencing purposes. "A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information[.]" ***Commonwealth v. Karash***, 452 A.2d 528, 528 (Pa. Super. 1982) (citations omitted). However, "it is not improper for a court to consider a defendant's prior arrests which did not result in conviction, as long as the court recognizes the defendant has not been convicted of the charges." ***Commonwealth v. Fries***, 523 A.2d 1134, 1136 (Pa. Super. 1987).

Between these extremes lies a large grey area covering prior allegations of criminal conduct which did not result in an arrest or formal criminal charges. In ***Commonwealth v. P.L.S.***, 894 A.2d 120 (Pa. Super. 2006), this Court acknowledged that "prior uncharged criminal conduct can be considered for sentencing purposes *under certain limited circumstances*." *Id.* at 128 (emphasis added). For instance, in ***Commonwealth v. Vernille***,

418 A.2d 713 (Pa. Super. 1980), the sentencing court had relied on allegations of uncharged criminal conduct in crafting the defendant's sentence. However, information regarding the uncharged conduct "was *contained in the presentence investigation report* and was also *developed at trial*, during which time [Vernille] had *ample opportunity to respond to the allegations*. [And, ultimately, Vernille] *admitted most of these facts*." **Id.** at 719 (emphasis added). The **Vernille** Court concluded that "[s]ince the information was properly before the judge and was indicative of [the defendant]'s character, the trial court did not err in considering it." **Id.**

By contrast, in **Commonwealth v. Chase**, 530 A.2d 458 (Pa. Super. 1987), this Court reviewed and rejected a sentence based, in part, on the trial/sentencing court's belief that the defendant had made a threatening phone call to the jury's foreperson after the verdict. Although it was plausible that the call had been made by someone acting on the defendant's behalf, there was scant evidence of his culpability for the call, and no formal charge or arrest resulted from it. Relying on **Commonwealth v. Sypin**, 491 A.2d 1371 (Pa. Super. 1985), we held that the sentence "must be vacated[,]" **Chase**, 530 A.2d at 462, because we were "persuaded from our reading of the trial court's remarks prior to sentencing that the court *may have considered* the phone call in determining the sentence." **Id.** at 461 (emphasis added).

In **Sypin**, we vacated a sentence imposed on a defendant convicted of committing sexual offenses against a nine-year-old boy, where the

- 14 -

sentencing judge had opined at the sentencing hearing as follows: "As you know, there are thousands of kids, and I mean it's thousands of kids that disappear every year. … Youngsters that no one ever sees or hears from again. Sometimes they're found dead; sometimes they're never found. … And their problems result from men like you…." *Id.* at 1372. We vacated Sypin's sentence because he had not been charged or arrested "in connection with the disappearance or death of any child." *Id.*[6]

In ***Commonwealth v. Cruz***, 402 A.2d 536 (Pa. Super. 1979), we recognized that "[a]n [u]nsubstantiated statement that a defendant is a major drug dealer would be an inappropriate factor in a judge's imposition of sentence." *Id.* at 538.[7] Likewise, in ***Commonwealth v. Schwartz***, 418 A.2d 637 (Pa. Super. 1980), we vacated a sentence based, in whole or in part, on *ex parte* information received by a sentencing judge from prosecuting officers regarding their belief that the defendant was heavily involved in drug trafficking.

---

[6] Not only did we vacate Sypin's sentence on that basis, we also ordered that the resentencing proceeding be "conducted by another trial judge[,]" because "[t]he statements made by the judge who imposed the sentence under review are such as to raise a reasonable question regarding the judge's impartiality." *Id.* at 1374.

[7] Ultimately, we found that Cruz had waived his claim by failing to preserve it in the trial court. Nevertheless, numerous cases have subsequently cited this language favorably as having accurately defined the bounds of permissible sentencing considerations. *See e.g., **P.L.S.**, 894 A.2d at 131; **Chase**, 530 A.2d at 462; **Sypin**, 491 A.2d at 1372; **Karash**, 452 A.2d at 528; **Commonwealth v. Schwartz**, 406 A.2d 573, 574 (Pa. Super. 1979).

In light of the applicable case law and the record in this case, we hold that the sentencing court improperly considered the prior allegations of Appellant's sexual misconduct in crafting its sentence. First, there is absolutely no reliable evidence that Appellant was adjudicated delinquent or convicted of any prior offenses before he was sentenced for the crimes in this case. The source in Dr. Pass's report for such information was not divulged, and it directly contradicted the statements of the Commonwealth, and the information contained in the PSI report produced by the APO. Second, there is also no credible evidence in the record that Appellant was ever charged with an offense related to the prior allegations. Again, the PSI report did not note any prior charges, or anything related to those prior allegations at all. The prosecutor's statement at the sentencing hearing did not even indicate that charges had been filed and dropped; instead, the prosecutor referred only to "allegations" which were "unable to be prosecuted." N.T. Sentencing Hearing, 6/24/15, at 4.[8]

Thus, this issue falls squarely within the category of prior allegations of criminal conduct which did not result in an arrest or formal criminal charges. In such circumstances, these prior allegations may only be considered for sentencing purposes "under certain limited circumstances." *P.L.S.*, 894

---

[8] An inability to prosecute stems from many causes. It is certainly possible that the allegations were true, while evidentiary proof was lacking. It is also possible that the allegations were untrue, which would also lead to an inability to prosecute.

A.2d at 128. Such circumstances were discussed in **Vernille**, but almost no analogy can be drawn to the circumstances in **Vernille** which permitted the inclusion of uncharged prior allegations of criminal misconduct at issue in that case. Here, the alleged criminal conduct was not contained in the PSI report, the allegations were not developed in the factual record during a trial (as there was no trial in this case), and there is no evidence of record that Appellant ever admitted, in whole or in part, to the allegations at issue. This includes Dr. Pass's report, which made no mention of whether Appellant ever admitted to the prior allegations during the course of his treatment.

Accordingly, we find the matter at hand more akin to **Cruz** – as the prior allegations in this case derive from unsubstantiated statements in the record concerning unrelated, uncharged criminal activity, and regarding which virtually no details were discussed by the court, the prosecutor, or Dr. Pass, nor do the details of the alleged crimes otherwise appear anywhere else in the record. The prior allegations are, on their face, multi-layered hearsay statements. Dr. Pass, who was clearly incorrect when he stated that Appellant had been previously adjudicated delinquent, did not even cite his source for the allegations. Likewise, the prosecutor's statement did not indicate the source of allegations, whether the victims had alleged the abuse (or whether a third-party had made the claim), or whether the prosecutor had learned of the prior allegations second-hand or through personal knowledge.

The Commonwealth argues that these allegations were properly considered for sentencing purposes under **P.L.S.**, but presents that argument without acknowledging that the **P.L.S.** Court only permitted consideration of prior allegations of criminal conduct "under certain limited circumstances." **P.L.S.**, 894 A.2d at 128. As a result, the Commonwealth does not discuss what the limited circumstances were that justified consideration of the prior allegations at issue in this case. The Commonwealth did not explain at the sentencing hearing, or now on appeal, why the prior allegations of such a serious nature never led to an arrest or formal charges, or why CYS closed their investigation into those allegations. Moreover, the Commonwealth does not address why the prior allegations were not raised in the PSI report, or why the Commonwealth otherwise failed to develop the record below in a manner beyond the unsubstantiated statements of the prosecutor at the sentencing. Accordingly, we find wholly unconvincing the Commonwealth's argument that the prior allegations were properly considered by the sentencing court. To permit the prior allegations of sexual misconduct at issue in this case, based on a record of unsubstantiated, undetailed, and likely hearsay statements by Dr. Pass and the prosecutor, would effectively eviscerate the rule that uncharged prior allegations of criminal conduct should only be considered in limited circumstances.

Next, Appellant complains that the sentencing court relied on "misinformation" when it stated at his sentencing hearing that Appellant did

not seek psychiatric help for his sexual misconduct until after he was arrested. Appellant's Brief at 45. The record confirms the nature of the court's assertion. As the court began to set forth the reasons for the sentence imposed, it stated: "I think about the fact that you did enter a plea of guilty. That you have sought help. But not until you were actually arrested." N.T. Sentencing Hearing, 6/24/15, at 4. When the court made this statement, it did not elaborate on the factual basis that led it to that conclusion, or provide any citation to the record. The sentencing court also fails to discuss this matter in its Rule 1925(a) opinion, despite being prompted to do so by Appellant's Rule 1925(b) statement.[9] The prosecutor had not even raised this matter at the sentencing hearing.

Our review of the record indicates that the court's statement lacked a foundation in fact, or that it was an unreasonable conclusion from known facts. The PSI report indicated that the police were made aware of the sexual misconduct giving rise to Appellant's convictions in this case on June 19th and June 25th of 2014. Appellant's PSI Report, 6/2/15, at 3. When they questioned Appellant, he admitted to the conduct, and was then charged based on his admissions. *Id.* There is no indication that Appellant

---

[9] In his Rule 1925(b) statement, Appellant argued that "the record showed that [he] proactively admitted his crimes and sought help prior to his arrest, despite the [t]rial [c]ourt's contention that [he] only sought help after he was arrested." Appellant's Rule 1925(b) Statement, 1/7/16, at ¶ 14(a)(i) (unnumbered pages).

was arrested or charged before he admitted to the sexual misconduct at issue. The PSI report does not indicate when or how the police were made aware of Appellant's crimes. However, Dr. Pass stated in his report that "it should be noted that these illegal sexual acts were brought to the attention of law enforcement authorities as a result of [Appellant]'s self[-]report[ing] to medical authorities while being treated at the Indiana Regional Medical Center emergency room for depression & suicide ideation." Final Treatment Status Summary Report, 5/16/15, at 2. The Commonwealth's recitation of the factual basis for Appellant's guilty plea also contradicts the court's statement. *See* N.T. Guilty Plea Hearing, 2/17/15, at 7 ("Appellant], who is [the victims'] biological brother, went to Indiana Regional Medical Center for treatment. At that time he got a psychological evaluation and made statements to the psychiatrist stating that he had inappropriate sexual contact with his younger siblings.").

Our review of the record shows no evidence to the contrary. Indeed, Dr. Pass's statement that Appellant self-reported is consistent with the criminal complaint, which stated that Appellant's younger brother had been brought in for questioning on June 25, 2014, not after making claims of abuse himself, but after a "mandatory reporting source" had reported Appellant's sexual misconduct. Criminal Complaint for Case 10399, 7/22/14, at 2. The Report went on to state that when Appellant was later brought in for questioning, he told the police he had first admitted to the abuse while seeking treatment at the Indiana Regional Medical Center. *Id.*

For these reasons, we agree with Appellant's contention that the sentencing court lacked any factual basis, or unreasonably interpreted the facts of record, when it concluded that Appellant had only "sought help" after he was arrested. To the contrary, the record indicates that Appellant "sought help" for his mental health issues, and in doing so self-reported the abuse he inflicted on his siblings. When that mandatory reporting source contacted the authorities, Appellant again admitted his crimes to the police, and did so before he was arrested.

The Commonwealth contends the court's statement was accurate in that Appellant did not seek specific help "for his sexual proclivities" until August of 2014, after his arrest, when he began seeing Dr. Pass. Commonwealth's Brief at 17. We are not persuaded by this argument, as it puts too fine a point on the issue. The clear impression given by the sentencing court was that Appellant only self-servingly sought mental health treatment for his sexual dysfunction after he was arrested. This is a clear misrepresentation of the record. It was Appellant's voluntary and possibly unprompted admissions to officials at the Indiana Regional Medical Center which led the police to investigate his crimes. Appellant then again admitted his crimes to police at their first meeting, and did so before being arrested or charged. Whether Appellant sought the treatment of a specific subset of the psychiatric profession - for a psychiatric diagnosis that had not yet even been made - is a trivial distinction for the Commonwealth to make, and we reject it on that basis.

Next, Appellant complains that the record does not support and, in fact, contradicts the sentencing court's assertion that "the impact on [Appellant's victims] must be 'absolutely horrendous.'" Appellant's Brief at 46. During its statement at the sentencing hearing, the court said: "I think in spite of the letters that your brother and sister sent me, that the impact on them must be absolutely horrendous. I can't imagine a child of that age, children of that age going through being attack by someone that they loved and trusted." N.T. Sentencing Hearing, 6/24/15, at 5. Appellant argues that the record and specific circumstances of this case simply refute the sentencing court's characterization of the lasting effects of Appellant's crimes on the victims.

Again, despite being prompted to address this specific concern by Appellant's Rule 1925(b) statement, *see* Appellant's Rule 1925(b) Statement, 1/7/16, at ¶ 14(a)(ii) (unnumbered pages), the court made no attempt to defend or support that statement in its Rule 1925(a) opinion by citation to evidence contained within the record. Indeed, the court made no attempt to address the matter at all.

However, in the context of the court's contemporaneous comments, it appears that the court was asserting, in part, that Appellant's relationship to the victims was a significant aggravating sentencing factor because his crimes would ostensibly have had a greater negative impact on those victims. In our review of the record, we ascertain no evidence tending to support this claim beyond the general nature of the crimes committed,

including the relationship between Appellant and his victims. In some cases, this may be enough, without more, to justify the court's comment. Without qualification, we agree that terrible crimes were committed, and these terrible crimes were committed on children by someone entrusted with their care. These are valid, undisputable concerns that are relevant at sentencing.

However, it is also a widely accepted reality that child victims of sexual violence are rarely abused by complete strangers.[10] Thus, it can be readily deduced that at least as often as not, a child victim of sexual abuse is victimized by someone they loved or trusted, or otherwise by someone entrusted with their care, even when that person is not a family member, but instead a family friend, neighbor, or other confidant. In any event, the impetus of the court's comment at issue appears to be that the impact on these victims *must* be greater *because* Appellant was a family member. This is not a wholly illogical conclusion in a vacuum, and may very well be true more often than not. However, in the context of this case, it appears the court applied a general rule without regard to evidence that only points to this case being an exception to that general rule.

---

[10] The United States Department of Justice reports that only about 10% of perpetrators of child sexual abuse are strangers to the child, while 30% of perpetrators of child sexual abuse are family members. *See* https://www.nsopw.gov/en-US/Education/FactsStatistics.

For instance, in the PSI report, there is no mention of the "absolutely horrendous" effect of Appellant's crimes on his victims, nor any language, whatsoever, remotely conveying that sentiment. The only discussion of the impact on the victims comes from a passage in the PSI report contained under the heading, "Victim Impact Statement." Therein, it is stated:

> This Investigator spoke with the minor victims' mother, … who is also the mother of [Appellant]. She reported that both minor victims "are fine now." [She] notices no lingering effects due to the sexual assaults. She stated that they are both good students and have many friends. [She] states that they show no negative signs due to the abuse. She reported that staff from Pittsburgh Action Against Rape (PAAR) recommended treatment/counseling for the minor victims but [she] stated that neither child would go to counseling. She stated that she is keeping a close eye on both children for any negative effects.
>
> [She] reported that there is a no-contact order in place and that [Appellant] has not been in contact with the victims since the crime. She stated that the children ask about their older brother and mention how they enjoyed playing video games with him.

Appellant's PSI Report, 6/2/15, at 4.

The victims each wrote victim impact statements to the court. Appellant's younger brother wrote:

> My name is []. I like to play baseball[.] I am [Appellant's] little brother. I am doing fine and I can't wait till summer. I forgive [Appellant] for what he has done. I miss when he would come over and we all have a good time. I don't want to see [Appellant] go to jail. I want him to be able to see that doctor so he can come home and we can all have a good time. I miss when we all can't see each other and me and [Appellant] play games. Also I would like us all to see one of my baseball games.

Sentencing Memorandum, 6/9/15, at 22-23 (unnumbered pages).

Appellant's younger sister wrote:

> My name is [].  I love playing games and drawing.  I'm [Appellant's] little sister.  I can't wait until swimming this summer.  I'm fine and I forgive him.  I miss when he came over or when we went to the campground and told jokes.  I don't want [Appellant] to go to jail.  I want [Appellant] to keep seeing his doctor.  I would want him to come and swim with me and my family.  Please don't break my little heart and send him to jail[.]  I don't want to see him in jail EVER.  Please have a change of heart and not send him to jail[.]

*Id*. at 24.

Numerous other letters from Appellant's immediate and extended family (each indirect victims of Appellant's conduct in their own way) were written on his behalf, all with a common theme.  They wanted Appellant to receive community-based sex-offender treatment, and they all committed to support his treatment efforts.  *Id.* at 16-21.  Another common theme was the view that a lengthy term of incarceration would be highly damaging to the family.  There is no other evidence in the record concerning the impact of Appellant's crimes on his victims.  Accordingly, we agree with Appellant that the sentencing court's conclusion that effect of his crimes on the victims in this case *must* be *absolutely horrendous* is lacking support in the specific and unique circumstances of this case.

Appellant next complains that the trial court failed to consider his rehabilitative needs.  In this regard, Appellant points to Dr. Pass's report, which generally indicates that, at the time of sentencing, Appellant had been fully cooperative and compliant in his state-certified sex offender treatment administered by Dr. Pass.  Dr. Pass assessed that Appellant was a low to moderate risk for sexual offense relapse.  Final Treatment Status Summary

Report, 5/16/15, at 4. In summarizing his finding, Dr. Pass stated that Appellant "has consistently impressed as one who is highly motivated to continue in treatment…." *Id.*

Our review of the record, however, does not support Appellant's conclusion that the trial court failed to consider his rehabilitative needs. Although we view Appellant's sentence to be inconsistent with the evidence of record concerning Appellant's rehabilitative needs, we are simply not convinced that the sentencing court failed to consider them. It appears that the court, instead, considered Appellant's rehabilitative needs but simply afforded far more weight to other statutory sentencing factors, including "the protection of the public, [and] the gravity of the offense as it relates to the impact on the life of the victim and on the community[.]" 42 Pa.C.S. § 9721(b). This is reflected in the sentencing court's comments at sentencing, when it acknowledged that "Dr. Pass' report is very positive and leads me to think that he believes that you should be on probation." N.T. Sentencing Hearing, 6/24/15, at 5. Earlier during that hearing, the court had commented that Appellant's sentencing memorandum was "very extensive … including a positive report from Dr. Pass, who[m] I deeply respect." *Id.* at 3. In light of these comments, we simply cannot ascertain an abuse of discretion in the court's consideration of Appellant's rehabilitative needs. The court expressed deep respect for Dr. Pass, acknowledged Dr. Pass' implicit conclusion that Appellant's rehabilitative needs would be better served through treatment rather than incarceration, but nevertheless relied

primarily on other factors in crafting Appellant's sentence. Thus, we view this aspect of Appellant's claims to be a challenge asserting the improper weighing of legitimate sentencing factors. Our standard of review does not permit this Court to subjectively reweigh such factors.

Appellant also argues that the sentencing court failed to properly consider "extensive mitigating evidence." Appellant's Brief at 54. With regard to this claim, as well, we conclude that Appellant is asking this Court to reweigh the various sentencing considerations before the trial court, at least to the extent that Appellant is not relying on the matters discussed above regarding the court's consideration of facts not supported or otherwise contradicted by the record. Accordingly, we find this aspect of Appellant's claim to be lacking merit.

Finally, we now return to the question whether the court's errors, discussed above, resulted in an "unreasonable" or "clearly unreasonable" sentence. In doing so, we must consider whether the sentences were individualized to Appellant with regard to the nature and circumstances of the offense, the sentencing court's observations of Appellant, the findings that formed the basis of the sentence, and the sentencing guidelines. ***See*** 42 Pa.C.S. § 9781(d). Thus, we must determine whether Appellant's sentence for indecent assault was unreasonable, and whether his sentence for sexual assault was clearly unreasonable.

In his brief, Appellant compares this matter to our decision in ***Commonwealth v. Coulverson***, 34 A.3d 135 (Pa. Super. 2011). In that

case, the defendant pled guilty to having forcibly raped and robbed a victim whom he found waiting alone for a bus on a city street; in the following days, he also burglarized, robbed, and assaulted four additional victims. *Id.* at 139-141. Ultimately, after entering a guilty plea, the defendant was sentenced to 18-90 years' incarceration, which included several statutory maximum sentences imposed to run consecutively with respect to the maximum term imposed, but where the minimum terms all fell within the standard range of the sentencing guidelines. The defendant unsuccessfully challenged his sentence in a post-sentence motion, arguing that the sentence imposed "was excessive, not individualized, and not adequately explained on the record." *Id.* at 141.

On appeal, we noted that the sentencing court had made few comments at the sentencing hearing, other than to say:

> Mr. Coulverson, I've listened to everything that everyone had to say, including you, your lawyer, your family, the victim, the victim's family, the victim's friends. I reviewed the presentence investigation report, which I have considered along with the other information.
>
> The destruction you've caused to [the victim], her family, her friends, your family, your friends, the future generations of all those people will last forever.

*Id.* at 144 (citation omitted). Ultimately, this Court determined the trial court had abused its sentencing discretion by relying almost entirely on the victims' impact statements in crafting the defendant's sentence.

There is much to distinguish between this case and **Coulverson**. The gravity and number of crimes at issue in **Coulverson** are not comparable to

those of the instant one, and it is clear that the victim impact statements in that case provided a far different picture of the effect of Coulverson's crimes on his victims than the victims' impact statements in this case. Moreover, the sentence imposed in **Coulverson** facially appeared to conform to the standard guideline sentencing range suggested, but the court had imposed maximum sentences more in line with the statutory maximums which would have fallen in or outside the aggravated sentencing range. Clearly, the *facts* of **Coulverson** cannot even begin to dictate a specific result in this case.

However, the *principles* expressed by this Court in **Coulverson** are no less applicable here. Therein, after acknowledging the weight of the victims' powerful and emotional impact statements, we stated:

> Nevertheless, the deliberation of a court of law demands evaluation of multiple considerations that private grief does not. Thus, while a crime's impact on the victim continues to be a significant element of a sentencing judge's consideration, the court may not ignore the continuum of circumstances underlying a defendant's criminal conduct, society's need for rehabilitation, or the statutory factors enunciated in our Sentencing Code on the way to imposing a maximum sentence. … Although the court acknowledged the PSI report, it did so only as a perfunctory exercise and focused its consideration entirely on the severity of Coulverson's offenses and the victims' impact statements. Its discussion evinced no consideration whatsoever of the dysfunction that marked Coulverson's own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation after serving a substantial term of eighteen years' incarceration. The resulting sentence cannot be described as "individualized" in any meaningful way. Consequently, notwithstanding the commencement of Coulverson's multiple sentences in the standard guidelines range, we find the maximum sentence imposed "clearly unreasonable."

- 29 -

*Id.* at 149–50.

Here, similar to what occurred in ***Coulverson***, the sentencing court premised a decision in significant part on the impact of Appellant's crimes on the victims. However, in ***Coulverson***, that consideration was actually reflected in, and supported by, the victims' impact statements. Here, the court's conclusion that the impact on the victims *must* be 'absolutely horrendous' did not just lack a foundation in the record, but the victims' impact statements tended to contradict the court's statement. The victims in this case expressed that they had already forgiven Appellant, and essentially pleaded with the sentencing court for leniency for their older brother. Thus, there is even less cause in this case than there was in ***Coulverson*** to accept the court's judgment with regard to the impact on the victims in this case. The sentencing court in ***Coulverson*** had relied too much on the victims' impacts statements, but in no way understated or misconstrued them. Here, the sentencing court acknowledged the victims' impact statements in a most superficial fashion, but then asserted unsupported conclusions that contradicted the record with regard to the crimes' lasting impact on those victims.

Another factor we must consider concerns the sentencing court's observations of Appellant. Here, Dr. Pass' report, the PSI report, and the procedural development of this case, all contradict the sentencing court's statement that Appellant did not seek treatment until after he was arrested. Indeed, as discussed above, nothing in the record tends to support the

court's comment. Appellant's crimes in this case appear to have been exposed only through his admissions to mandatory reporters. Appellant then admitted his crimes when questioned by the police, and he did so before he was arrested or charged in this case. He then later admitted to his conduct through his guilty plea. The notion that Appellant only sought help after facing severe legal consequences is simply belied by the record.

The court also relied on unsubstantiated claims about prior crimes for which Appellant was never arrested, charged, or convicted. As discussed above, no exceptional circumstances justified the court's reliance on these allegations and, even worse, the allegations were not supported in the record, either through Appellant's admission to such conduct, renewed allegations by the victims, or any other independent source of evidence beyond what appears to be hearsay on the part of the prosecutor and Dr. Pass.

Most concerning, these impermissible factors also appear to be the primary basis for the sentencing court's decision to depart upward from the recommended sentencing guidelines. A clear pattern emerges when viewing the sentencing court's statement at Appellant's sentencing hearing. The court would note some mitigating circumstance, and then effectively dismiss it by stating one of the impermissible factors on which it relied. First, the court acknowledged that Appellant sought help for sexual dysfunction and pled guilty, both of which tend to demonstrate his amenability to rehabilitation. Then the court qualified those sentencing considerations by

falsely asserting that Appellant had only self-servingly sought treatment after he was arrested. The court later acknowledged, but did not discuss, the victims' impact statements. However, the court then disregarded the content of those statements, as well as the observations made by the victims' mother in the PSI report, by stating that the impact on the children *must* be *absolutely horrendous*. Such a statement might be tolerated in the absence of any evidence other than the facts underlying Appellant's conviction, however, the only evidence which directly addressed the lasting effects on the victims plainly was at odds with the court's conclusion. This strongly suggests a lack of individualization in Appellant's sentence, as the court appeared to be generalizing about victims of sexual violence, rather than addressing the circumstances which were unique to this case. Finally, the court acknowledged the 'very positive' report from Dr. Pass, for whom the sentencing judge had earlier expressed great respect. That report strongly endorsed Appellant's rehabilitative potential. Then the court essentially rejected the recommendation on the basis of uncharged prior allegations of sexual misconduct that allegedly occurred when Appellant was a young teenager. Notably, although we find that the court impermissibly considered these allegations at sentencing, Dr. Pass had even assumed that they were true, yet he still crafted a "very positive" report.

In its opinion, the sentencing court asserts its reliance on presumption established in **Commonwealth v. Devers**, 546 A.2d 12 (Pa. 1988). In **Devers**, our Supreme Court held: "Where pre-sentence reports exist, we

shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *A pre-sentence report constitutes the record and speaks for itself*." ***Id.*** at 18 (emphasis added).[11]    However, the presence of a PSI report does not render a sentence unreviewable merely because the sentencing court read it.   In ***Commonwealth v. Moore***, 617 A.2d 8 (Pa. Super. 1992), we overturned an unreasonably lenient sentence despite the fact that the sentencing court in ***Moore*** "had the pre-sentence report before it and was cognizant of its contents," because it was "equally obvious that [the court] failed to properly analyze [relevant statutory sentencing factors] and did not correctly consider and weigh all relevant factors…." ***Id.*** at 13 (quoting ***Commonwealth v. Masip***, 567 A.2d 331, 336 (Pa. Super. 1989)).   The PSI report in ***Moore*** established that

> the defendant's repeated, continuous motor vehicle and substance abuse violations so adversely impact the protection of the public and the rehabilitative needs of the defendant that they could not have been properly weighed, together with all the other facts and circumstances of this case, prior to the trial court's imposition of defendant's mitigated sentence.

***Id.***

---

[11] The sentencing court relied on identical language taken from ***Commonwealth v. Macias***, 968 A.2d 773 (Pa. Super. 2009), which simply restated the ***Devers*** presumption without direct attribution to ***Devers***.

Instantly, the disconnect between the record and the sentence imposed by the sentencing court is at least as significant as it was in **Moore**, and demonstrates that the sentencing court here did not properly consider the various statutory sentencing factors, as the court had repeatedly relied on impermissible factors such as unreliable facts and misinformation. An objective view of the unique circumstances of this case, taken from the PSI report and other parts of the record, and untainted by these impermissible factors, told a wildly different story than that crafted by the sentencing court. Appellant is a young man, barely out of his teenage years, with no prior record of any sort. His crimes, committed against his younger siblings, were, without qualification, serious offenses and serious breaches of trust, both with respect to the victims, and with regard to his parents, who entrusted him with their care. However, he admitted to his crimes while seeking mental health treatment. He was forthcoming with the authorities when they were alerted to his admissions. Prior to pleading guilty, and through the sentencing proceeding, Appellant participated in and fully cooperated with a state-certified sexual offender program, and received a patently positive assessment for his efforts there from Dr. Pass. Appellant has a supportive immediate and extended family who, while acknowledging the gravity of his crimes, nonetheless have forgiven him, and are now committed to assisting him in continuing his treatment. The victims themselves, although still young children, pleaded with the sentencing court

for leniency. Ultimately, but perhaps not surprisingly, the prosecutor did not even recommend a particular sentence to the court.

These are not common features among the countless sexual offense cases this Court routinely reviews. In a case that objectively called for a mitigated or, at least, a standard range sentence, the sentencing court here chose an aggravated range sentence and a sentence above the guidelines. The most compelling reasons offered by the sentencing court for this upward deviation were not supported by the record and, often, directly contradicted it.[12] In these circumstances, we are compelled to conclude that Appellant's

_____

[12] We note our awareness of a possible emerging pattern in this particular sentencing court of routinely sentencing sex offenders in the aggravated sentencing range and/or outside the guidelines. *See **Commonwealth v. Bernal***, 2016 WL 7362624 at *7 (Pa. Super. 2016) (unpublished memorandum). The sentence(s) in this case tend to match such a pattern, given the extreme dissonance between the circumstances of this case and the sentence(s) imposed. This invites the obvious question: if the circumstances at issue here do not warrant a standard or mitigated range sentence, when, if ever, will such a sentence be warranted?

There will always be cases where circumstances call for, if not practically compel, sentences which exceed the standard guideline recommendations. Our standard of review affords the trial court a wide degree of discretion in determining when such sentences are appropriate. However, we expect that sentencing courts understand that a standard range sentence is the norm and, consequently, that sentences which exceed (or fall below) the standard recommendation should be relatively infrequent by comparison. The appearance of bias, and doubt regarding a court's commitment to individualized sentencing, both rationally emerge when such a pattern of routine deviation from sentencing norms is demonstrated by adequate evidence.

*(Footnote Continued Next Page)*

sentences for sexual assault and indecent assault were *both* clearly unreasonable. Accordingly we vacate Appellant's judgment of sentence and remand for resentencing.

Judgment of sentenced **vacated**. Case **remanded** for resentencing. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/9/2017

---

*(Footnote Continued)* ————————————

Instantly, Appellant has not alleged bias specifically, but he has challenged the court's commitment to individualized sentencing, a commitment that cannot be maintained in the presence of a bias toward a specific class of offenders. Unfortunately, this Court is restrained, under **Commonwealth v. Whitmore**, 912 A.2d 827 (Pa. 2006), from ordering, *sua sponte*, the recusal of a trial court or sentencing judge. However, we are not restrained from reminding Appellant that he is permitted to file a recusal motion upon remand, in which context he may seek to develop a record of a pattern of bias, if one can be demonstrated by competent evidence.